[Cite as *State v. Daniels*, 2013-Ohio-3656.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| KENJI  MICHAEL DANIELS | : | Case No. 12CA121 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:              Appeal from the Court of Common
                                      Pleas, Case No. 2012-CR-350H


JUDGMENT:                             Affirmed


DATE OF JUDGMENT:                     August 21, 2013


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JILL M. COCHRAN                       PATRICIA O'DONNELL KITZLER
38 South Park Street                  3 North Main Street
Mansfield, OH  44902                  Suite 801
                                      Mansfield, OH  44902

*Farmer, P.J.*

{¶1}  On June 11, 2012, the Richland County Grand Jury indicted appellant, Kenji Michael Daniels, on one count of domestic violence in violation of R.C. 2919.25, one count of failure to comply with order or signal of police officer in violation of R.C. 2921.33 (later amended to fleeing and eluding in violation of R.C. 2921.331), one count of receiving stolen property in violation of R.C. 2913.51, and one count of attempted aggravated burglary in violation of R.C. 2911.11 and 2923.02.  Said charges arose from an argument involving appellant's girlfriend, Jessica Mills, while they were at the residence of Ms. Mills's cousin.  Following the argument, police initiated an investigation and attempted to speak with appellant which led to a police chase.

{¶2}  A jury trial commenced on November 19, 2012.  At the conclusion of the state's case, the domestic violence count was dismissed.  The jury found appellant guilty of the amended count and the attempted aggravated burglary count.  By sentencing entry filed November 30, 2012, the trial court sentenced appellant to two years on each count, to be served consecutively.

{¶3}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶4}  "APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER THE U.S. AND OHIO CONSTITUTIONS WERE IMPERMISSIBLY VIOLATED BY THE STATE'S WILLFUL FAILURE TO COMPLY WITH THE DISCOVERY REQUIREMENTS OF CRIMINAL RULE 16, WHICH VIOLATION FURTHER CONSTITUTES PROSECUTORIAL MISCONDUCT."

II

{¶5}   "APPELLANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL UNDER THE U.S. AND OHIO CONSTITUTIONS DUE TO THE IMPROPER JURY CHARGE ON COUNT IV, ATTEMPTED AGGRAVATED BURGLARY."

III

{¶6}   "APPELLANT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND BY SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION DUE TO THE INEFFECTIVENESS OF TRIAL COUNSEL."

IV

{¶7}   APPELLANT'S CONVICTIONS ON COUNTS II AND IV ARE CONTRARY TO THE MANIFEST WEIGHT AND SUFFICIENCY OF EVIDENCE PRESENTED AT TRIAL, THUS DENYING APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND UNDER SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION."

V

{¶8}   "APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL DUE TO THE CUMULATIVE ERRORS HEREIN, IN DEROGATION OF THE U.S. AND STATE CONSTITUTIONS."

I

{¶9}   Appellant claims the state engaged in prosecutorial misconduct in failing to disclose his statement made to a police officer in violation of Crim.R. 16.

{¶10} The test for prosecutorial misconduct is whether the prosecutor's actions were improper and if so, whether those actions prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160 (1990). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the contest of the entire trial. *Darden v. Wainwright,* 477 U.S. 168 (1986).

{¶11} Crim.R. 16 governs discovery and inspection. Subsections (A) and (B)(1) state the following:

**Purpose, Scope and Reciprocity.** This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures.

**Discovery: Right to Copy or Photograph.** Upon receipt of a written demand for discovery by the defendant, and except as provided in division (C), (D), (E), (F), or (J) of this rule, the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items related to the particular case indictment, information, or complaint, and which are material to the

preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule:

(1) Any written or recorded statement by the defendant or a co-defendant, including police summaries of such statements, and including grand jury testimony by either the defendant or co-defendant;

{¶12} During trial, the state called Mansfield Police Officer Jeff McKinley who transported appellant to the hospital for treatment following his arrest after a police chase. During treatment, Officer McKinley testified to the following exchange between appellant and a nurse (T. at 191-192):

A. As he was being assessed by the nurse, actually, they had had a bit of an exchange as to how he was injured. She was inquiring as to some of the injuries he was claiming and what they needed to do as far as X-rays and things. The Defendant made a statement that he had been driving the vehicle.

Q. He stated that he had been driving?

A. Yeah. He made a comment to the nurse.

Q. Okay. Did he make any other comments?

A. At that time I guess he realized that I was in the room and he made a comment that I didn't hear him.

Q. I'm sorry, what do you mean? What did he say?

A. After he made the comment to the nurse, he turned and said,

You didn't hear that, and uttered an obscenity at me.

{¶13} Officer McKinley admitted to supplementing the criminal report with what he had overheard. T. at 193, 195.

{¶14} To justify its failure to provide the supplement, the state argued it was aware of the exchange and told Officer McKinley to supplement his report, but had not yet received it. T. at 199-200. All concede that the Richland County Prosecutor's Office uses the open discovery method in compliance with Crim.R. 16.

{¶15} On July 5, 2012, the state provided discovery and disclosed Officer McKinley as a witness. He was subpoenaed as a witness. The discovery compliance notice filed July 5, 2012 includes the language: "All persons identified in any exhibits or documents attached hereto or included in any records of any police agency, government office or medical provider involved in this case are also considered witnesses even if not listed hereon."

{¶16} Amended supplements to discovery were filed on November 14 and 16, 2012, three to five days prior to trial, but did not include the supplement of Officer McKinley. The revelation of the supplement did not occur until Officer McKinley testified on November 20, 2012. Officer McKinley was testifying to appellant's demeanor at the hospital. T. at 191-192. The supplementation of a critical admission by appellant on the second day of trial is a violation of the spirit of the rule.

{¶17} The trial court handled the matter by ordering the supplement be given to defense counsel after the "cat was out of the bag." T. at 200. Officer McKinley then reviewed photographs and testified to appellant's appearance after the police chase. T. at 201-203.

{¶18} The trial court's remedy was not in compliance with Crim.R. 16(A). However, no alternative remedy was suggested by defense counsel.

{¶19} An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long,* 53 Ohio St.2d 91 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long.* Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus. Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right.

{¶20} It was the state's position that appellant was the driver of the vehicle that led police on a chase resulting in the fleeing and eluding charge. To support its argument, the state presented Mansfield Police Officer Jason Bamman who testified he was familiar with appellant as he had dealt with him in the past, had accessed appellant's driver's license picture on his computer before the chase, and visually identified appellant as the driver of the vehicle. T. at 206-208. In fact, prior to the pursuit, Officer Bamman and appellant made eye contact. T. at 208. Officer Bamman

maintained visual contact of the vehicle the entire time. T. at 210, 214. After an extensive chase, Officer Bamman observed the vehicle stop and appellant exit the driver's side. T. at 215-216.

{¶21} Mansfield Police Officer Terry Rogers also identified appellant from his driver's license photo as the driver of the vehicle involved in the chase, and also had face-to-face visual contact with him as he drove past the police. T. at 229-232. Officer Rogers never saw any change of position of persons in the vehicle. T. at 233-234. After the vehicle stopped, Officer Rogers observed a person wearing a red sweatshirt exit the driver's side of the vehicle. T. at 234-235. Appellant was apprehended wearing a white t-shirt, but a red sweatshirt was discovered at the scene. T. at 245.

{¶22} Defense counsel waived opening statement, standing on the plea of not guilty to all the charges. T. at 88.

{¶23} Given the testimony of Officers Bamman and Rogers, we find appellant's identity as the driver of the vehicle was firmly established. Therefore, we conclude the discovery violation did not unduly prejudice appellant or affect the outcome of the trial.

{¶24} Assignment of Error I is denied.

II

{¶25} Appellant claims the trial court gave an incomplete charge on the attempted aggravated burglary charge as it failed to define what underlying criminal offense he intended to commit if he had entered the residence.

{¶26} Crim.R. 30 governs instructions. Subsection (A) states the following in pertinent part: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its

verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury." Appellant did not object to the jury instructions therefore, the arguments herein shall be reviewed under the plain error standard. *Long, supra*; Crim.R. 52(B).

{¶27} The trial court instructed the jury on the complained of issue as follows: "Only a purpose to commit a criminal offense is necessary and not the actual commission thereof. The criminal offense alleged to be committed is an attempted aggravated burglary." T. at 393. The state concedes no specific definition or instruction of the intended criminal offense was given. Appellee's Brief at 18. No specific offense was alleged in the indictment.

{¶28} During closing argument, the state argued the intended criminal offense was some form of physical violence, i.e., menacing, assault, domestic violence, referencing the testimony of Carol Mills that appellant threatened to kill her, her daughter Jessica, and her granddaughter. T. at 156-157, 372-373. Defense counsel argued there was no intent to commit a criminal offense as appellant merely wanted to retrieve his keys and cell phone. T. at 322-325, 378.

{¶29} Carol Mills testified several individuals where outside arguing, including her daughter Jessica and appellant. During the argument, appellant threatened everyone. T. at 151-152, 156-157. Appellant "took a bullet out of his pocket and threw it and said, I got nine more, and he's, like, pointing at people." T. at 151. Everyone ran into the residence, locking the door behind them. T. at 154-155. Appellant attempted to gain entry and damaged the door and the framing around the door. T. at 155-156.

After being informed that the police had been called, appellant stated "he had bullets for the police, too, so let them come." *Id.*

{¶30} Appellant's intention was clearly defined as either innocent (retrieval of keys and cell phone) or criminal (physical violent offense). We find no plain error on this issue.

{¶31} Assignment of Error II is denied.

III

{¶32} Appellant claims he was denied the effective assistance of trial counsel because his counsel should have requested a continuance or mistrial on the delayed discovery (Assignment of Error I) and should have objected to the jury charge (Assignment of Error II).

{¶33} The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a

reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶34} Appellant's arguments herein have been addressed in Assignments of Error I and II wherein we concluded the outcome of the trial would not have been affected by the complained of errors.

{¶35} Assignment of Error III is denied.

IV

{¶36} Appellant claims his conviction was against the sufficiency and manifest weight of the evidence.

{¶37} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily

against the conviction." *Martin* at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶38} Appellant was convicted of fleeing and eluding in violation of R.C. 2921.331(B) and (C)(5)(a)(ii) which state the following:

> No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
>
> (C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.
>
> (5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
>
> (ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶39} Appellant challenges the testimony of Officers Bamman and Rogers as to whether he was the driver of the vehicle. Appellant testified he was sitting in the back seat and "Bebe" was driving the vehicle. T. at 328-330. There is no dispute that the

officers pursued the vehicle with visible and audible signals, the vehicle failed to stop, and a chase ensued.

{¶40} The sole issue in dispute was the identity of the driver. As set forth in Assignment of Error I, Officer Bamman had prior dealings with appellant, and both officers reviewed his driver's license picture on their computers. T. at 206-208, 229-230. Both officers testified to face-to-face encounters with the driver of the vehicle and identified appellant as the driver. T. at 208, 231-232.

{¶41} After the vehicle stopped, Officer Bamman testified appellant exited the driver's door and ran away. T. at 216-219. He testified appellant had been wearing a red sweatshirt. T. at 221-222. Officer Rogers testified the driver who exited the vehicle was wearing a red sweatshirt. T. at 234-235. Appellant and his witnesses testified he was wearing a white t-shirt, and in fact, appellant was apprehended wearing a white t-shirt, but a red sweatshirt was discovered near the site where he was found. T. at 245, 290, 297, 316, 326. Appellant was tracked by a canine officer. T. at 176-180, 237-239.

{¶42} We conclude there was ample testimony to support the jury's determination of appellant's identity as the driver of the vehicle, and sufficient evidence to substantiate the jury's guilty finding on the fleeing and eluding charge.

{¶43} Appellant was also convicted of attempted aggravated burglary in violation of R.C. 2911.11(A)(1) and 2923.02 which state the following, respectively:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an

accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

{¶44} It is undisputed that appellant attempted to enter the residence. Jessica Mills and appellant started arguing while outside of her cousin's residence. T. at 91. Jessica's mother, Carol Mills, and Jessica's brother, Cliff Mills, came outside to defuse the situation. T. at 149-150. Appellant made threats to everyone. T. at 92, 151-152, 157. Jessica, Carol, and Cliff went into the residence and shut and locked the door. T. at 154. Thereafter, appellant broke open the door. T. at 155. After being notified that the police had been called, appellant ran away. T. at 155-156. The responding officer, Mansfield Police Officer Paul Lumadue, testified the front door and the door frame had been kicked in and the dead bolt was bent. T. at 136; State's Exhibits 4, 5, and 6. Photographs established force to the door and the door was broken from the outside going in. T. at 136-137. Appellant testified Cliff pushed Carol back and she stumbled against the door, breaking it. T. at 324. Appellant claimed he merely wanted to retrieve his keys and cell phone. T. at 324-325.

{¶45}  We conclude there was sufficient evidence to substantiate the jury's guilty finding on the attempted aggravated burglary charge.

{¶46}  Upon review, we find sufficient evidence to support appellant's convictions, and no manifest miscarriage of justice.

{¶47}  Assignment of Error IV is denied.

V

{¶48}  Appellant claims the cumulative errors treated as a whole denied him a fair trial.

{¶49}  Having found no error in the assignments of error above, this assignment of error is denied.

{¶50}  The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Farmer, P.J.

Wise, J. and

Delaney, J. concur.

_____
Hon. Sheila G. Farmer

_____
Hon. John W. Wise

_____
Hon. Patricia A. Delaney

SGF/sg 723

[Cite as *State v. Daniels*, 2013-Ohio-3656.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| KENJI MICHAEL DANIELS | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 12CA121 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed. Costs to appellant.

_____
Hon. Sheila G. Farmer

_____
Hon. John W. Wise

_____
Hon. Patricia A. Delaney